CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

NOV 1 9 2012

JULIA C. DUDLEY, CLERK
BY: _____
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **ANDREA D. AURIEMMA,** | ) | **Civil Action No. 7:12cv00284** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **LOGAN'S ROADHOUSE, INC. and** | ) | |
| **JOHN DOE,** | ) | |
| | ) | **By: Samuel G. Wilson** |
| **Defendants.** | ) | **United States District Judge** |

Plaintiff Andrea D. Auriemma brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and Virginia law against her former employer, Logan's Roadhouse, Incorporated ("Logan's"), for sexual harassment and retaliation and a host of state law torts, including assault and battery, arising out of the conduct of an unidentified former coworker. She also asserts claims against the unidentified former coworker. Logan's has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), maintaining that the conduct described in Auriemma's complaint was not sufficiently severe or pervasive to hold it liable for sexual harassment under Title VII and that Auriemma's exclusive remedy for her state law tort claims arises under the Virginia Workers' Compensation Act ("VWCA"). Given the remedial purpose of Title VII and the court's obligation to construe Auriemma's complaint in the light most favorable to her, the court finds that Auriemma has stated a plausible Title VII sexual harassment claim against Logan's, though not a plausible retaliation claim. The court also finds that Auriemma has stated plausible state law tort claims not subject to the exclusivity provisions of the VWCA. Accordingly, the court denies Logan's motion to dismiss

Auriemma's Title VII sexual harassment and state law tort claims, but grants Logan's motion to dismiss Auriemma's retaliation claim.

## I.

From January 2011 through August 5, 2011, Auriemma worked as a server at Logan's restaurant located in Roanoke, Virginia. Auriemma alleges that during her employment, in March of 2011, a coworker (whom she cannot identify by name because Logan's no longer employs him and because he is likely an undocumented alien) sexually assaulted her. Auriemma alleges that the coworker backed her into a food storage cabinet, "grabbed" her, kissed her against her will, touched her through her clothing, and made "an obvious attempt to further sexually assault her." (Compl. ¶ 10, ECF No. 1.) According to Auriemma, the coworker "had a known propensity for violent, aggressive sexually assaultive behavior," and this behavior was known to Logan's management at the time of her assault. (Compl. ¶ 15, ECF No. 1.) She alleges, in particular, that the male coworker had sexually assaulted another female server, that management tolerated his conduct, and that the workplace was "permeated with various forms of sexually harassing behavior," including the sexually harassing behavior of one supervisor who "frequently directed sexually suggestive comments and propositions to various female servers . . . [and who] often inappropriately touched or interacted with several female servers." (Compl. ¶ 18–19, ECF No. 1.) She alleges that the workplace environment perpetuated the types of behavior and attitudes that eventually led to the sexual assault by her coworker.

Auriemma filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex-based discrimination and harassment arising out of her sexual assault. On May 31, 2012, the EEOC terminated its proceedings and issued a Notice of Right to Sue letter in connection with each of Auriemma's discrimination charges. Auriemma

alleges that supervisors at Logan's retaliated against her for complaining of the assault through heightened supervision of her job performance and threats to report her for minor infractions. Auriemma claims she complained to Logan's about her supervisor's retaliation, but it took no obvious action in response to her complaints. Logan's failure to take any remedial action led to Auriemma's resignation, which she labels a constructive discharge.

## II.

Logan's maintains that Auriemma's complaint fails to state plausible claims of sexual harassment and retaliation under Title VII. The court finds that Auriemma has stated a plausible sexual harassment/hostile work environment claim but not a plausible retaliation claim. Accordingly, the court grants Logan's motion to dismiss in part and denies it in part.

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." In evaluating a Rule 12(b)(6) motion to dismiss, the court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. Phillips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). While the court must accept the claimant's factual allegations as true, this tenet is "inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). Rather, plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and if the claim is not "plausible on its face," it must be dismissed. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint achieves facial plausibility when it contains sufficient factual allegations to support a reasonable inference that the defendant is liable for the misconduct alleged. Id. at 556. "Asking for plausible grounds to infer" a claim's existence "does not impose

a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim. Id. at 556. This analysis is context-specific and requires "the reviewing court to draw on its judicial experience and common sense." Francis v. Giacomello, 588 F.3d at 186, 193 (4th Cir. 2009).

## A.

Logan's moved to dismiss Auriemma's claim for a hostile work environment on the ground that the conduct she alleges was not severe or pervasive enough to support such a claim. The court finds otherwise and denies Logan's motion.

Sexual harassment that creates a hostile work environment gives rise to a cause of action under Title VII. See Meritor Sav. Bank v. Vinson, 477 U.S. 57, 66 (1986); EEOC v. Cent. Wholesalers, Inc., 573 F.3d 167, 174 (4th Cir. 2009) (because "an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." (quoting EEOC v. R & R Ventures, 244 F.3d 334, 338 (4th Cir. 2001))). To state a claim for hostile work environment, a plaintiff must show: (1) that she was harassed "because of" her sex; (2) that the harassment was unwelcome; (3) that the harassment was sufficiently pervasive or severe as to create an abusive work environment; (4) that some basis exists for imputing liability to the employer. Smith v. First Union Nat'l Bank, 202 F.3d 234, 241 (4th Cir. 2000).

To determine whether a hostile work environment claim meets the "severe and pervasive" requirement, the court considers the frequency of the harassing conduct, its severity, whether it is physically threatening or humiliating or merely offensive speech, and whether it unreasonably interferes with the employee's work performance. See id. at 242 (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)). To survive a motion to dismiss, a plaintiff simply

must allege a short and plain statement of the claim that contains enough facts to state a claim to relief that is plausible on its face. See Fed. R. Civ. P. 8(a)(2); Twombly, 550 U.S. at 556.

Here, when viewed in light of the pleading principles and requirements for a Title VII action, Auriemma's allegations satisfy the "severe and pervasive" element of her hostile work environment claim.[1] Auriemma contends that her workplace "was permeated with various forms of sexually harassing behavior," that "at least one supervisor frequently directed sexually suggestive comments and propositions to various female servers . . . [and] this supervisor often inappropriately touched or interacted with several female servers," and that her coworker sexually assaulted her as a consequence of a "working environment [that] perpetuated the[se] types of behavior and attitudes." (Compl. ¶ 19–20 ECF No. 1.)  Considered in the light most favorable to her, the court finds that Auriemma has sufficiently alleged that Logan's tolerance of this behavior contributed to a sexually charged atmosphere.  She has alleged severe and pervasive harassment sufficient to constitute a hostile work environment, and a basis for imputing liability to Logan's.  Consequently, the court denies Logan's motion to dismiss Auriemma's sexual harassment claim.[2] Id.

---

[1] Logan's cites multiple cases to support its assertions that Auriemma's complaint does not allege factors sufficient to create a hostile work environment. But most of these cases were not dismissed on the pleadings. See EEOC v. Xerxes Corp., 639 F.3d 658 (4th Cir. 2011) (affirming in part, vacating in part, and remanding district court's grant of summary judgment for the employer); EEOC v. Sunbelt Rentals, Inc., 521 F.3d 306 (4th Cir. 2008) (reversing district court's grant of employer's motion for summary judgment and finding that facts existed to support the employee's claims); Cent. Wholesalers, 573 F.3d 167 (reversing district court's grant of employer's motion for summary judgment as to hostile work environment claim); Causey v. Balog, 162 F.3d 795 (4th Cir. 1998) (affirming district court grant of summary judgment on the determination that the employee failed to establish a prima facie hostile work environment claim); Rizkalla v. Eng'g Mgmt. & Integration, Inc., 2006 WL 4459434, at *5 (E.D. Va. Aug. 29, 2006) (on motion for summary judgment, plaintiff did not make out prima facie case for her claim of unlawful discharge based on sex under Title VII because she cannot establish that, at the time of discharge, she was performing at a level that met her employer's legitimate expectations).

[2] See generally Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) (discussing the liberal pleading standard applied to Title VII claims); see also Riley v. Buckner, 1 Fed. App'x 130, 134 (4th Cir. 2001) (affirming denial of motion to dismiss plaintiff's sexually hostile work environment claim because "[w]e are satisfied that [general] allegations, coupled with a specific example . . . are sufficient, though barely, to . . . survive[] a motion to dismiss"); Mandsager v. Univ. of N.C., 269 F. Supp. 2d 662, 673 (M.D.N.C. 2003) (finding that allegations that professor often put his arm around plaintiff, signed correspondence "Love, William," and sexually propositioned her

**B.**

Auriemma claims that Logan's retaliated against her in violation of Title VII. Logan's asserts that Auriemma's complaint does not plead facts sufficient to support a retaliation claim and has moved to dismiss on that basis.[3] Specifically, Logan's claims that the retaliatory conduct Auriemma alleges is not sufficient to constitute adverse employment action.[4] The court agrees with Logan's and dismisses Auriemma's retaliation claim.

Title VII prohibits employers from retaliating against an employee because of that employee's participation in a protected activity, including opposition to, or complaints about, an unlawful employment practice. 42 U.S.C. § 2000e-3(a); Hopkins v. Baltimore Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996). To prevail on her retaliation claim, Auriemma must prove three elements: (1) that she engaged in protected activity; (2) that an adverse employment action was taken against her; and (3) that there was a causal link between the protected activity and the adverse employment action. Mackey v. Shalala, 360 F.3d 463, 469 (4th Cir. 2004). An employer's action that creates "a significant change in employment status, such as hiring, firing,

---

were sufficient to show severe and pervasive harassment for purposes of a motion to dismiss); Barbier v. Durham Cnty. Bd. of Educ., 225 F. Supp. 2d 617, 625 (M.D.N.C. 2002) (concluding that multiple comments of a sexual nature and claims that defendant grabbed plaintiff, held her against him, and kissed her satisfied the severe and pervasive requirements of plaintiff's sexual harassment claim to survive motion to dismiss); Conner v. R.H. Barringer Distrib. Co., 152 F. Supp. 2d 856, 860 (M.D.N.C. 2001) (reasoning that general allegations of harassment and detailed statements about two harassing remarks and one physical encounter met the severe and pervasive element of plaintiff's sexual harassment claim under the 12(b)(6) standard); cf. Bass v. E.I. Dupont De Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (affirming dismissal of sexually hostile work environment claim which alleged only that plaintiff had disputes with managers and other employees about her work).

[3] Logan's has moved to dismiss Auriemma's constructive discharge claim. A constructive discharge is not a separate claim under Title VII. See Lockhart v. Village of Woodmere, No. 1:07CV2517, 2008 WL 4925817 (N.D. Ohio Nov. 14, 2008).

[4] Activities that constitute participation in a protected activity are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII. See 42 U.S.C.A. § 2000e-3(a). Participatory activities are vigorously protected to ensure employees' continuing access to the EEOC and the enforcement process. See Vasconcelos v. Meese, 907 F.2d 111, 113 (9th Cir. 1990) ("The purpose of section 2000e-3's participation clause is to protect the employee who utilizes the tools provided by Congress to protect his rights." (internal quotation marks omitted)).

failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits," is an adverse employment action. Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 761 (1998); see also James v. Booz–Allen Hamilton, 368 F.3d 371, 375 (4th Cir. 2001) (stating that for an employment action to be adverse, there must be evidence of a "discriminatory act which adversely affects the terms, conditions or benefits of the plaintiff's employment"). The law does not confine adverse employment actions to particular acts. Rather, courts should take a "'case-by-case approach,' examining the unique factors relevant to the situation at hand," in determining whether an employer's action qualifies as an adverse action. Jeffries v. Kansas, 147 F.3d 1220, 1232 (10th Cir. 1998) abrogated on other grounds by Burlington, 524 U.S. 742. Typical indicators of an adverse employment action include a decrease in pay, a demotion, loss of job title or supervisory responsibility, and loss of opportunities for advancement. See Boone v. Goldin, 178 F.3d 253, 255 (4th Cir. 1999).

"Constructive discharge, like any other discharge, is an adverse employment action that will support an action for unlawful retaliation." West v. Marion Merrell Dow, Inc., 54 F.3d 493, 497 (8th Cir. 1995). "[A]n employee is constructively discharged 'if an employer deliberately makes the working conditions of the employee intolerable in an effort to induce the employee to quit.'" Whitten v. Fred's Inc., 601 F.3d 231, 248 (4th Cir. 2010) (quoting Martin v. Cavalier Hotel Corp., 48 F.3d 1343, 1353–54 (4th Cir. 1995)). Thus, to prove a constructive discharge, a plaintiff must prove two elements: "(1) deliberateness of the employer's actions and (2) intolerability of working conditions." Id. at 248 (internal quotation marks omitted). Whether an employment environment is intolerable is determined from the objective perspective of a reasonable person. Williams v. Giant Food, Inc., 370 F.3d 423, 434 (4th Cir. 2004). "However, mere dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or

unpleasant working conditions are not so intolerable as to compel a reasonable person to resign." James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 378 (4th Cir. 2004) (internal quotation marks and alterations omitted).

Here, Auriemma alleges that Logan's subjected her to heightened oversight and scrutiny, threatened to report her for minor infractions, and failed to respond to her complaints, requests, and inquiries. Though she claims that this conduct led to her resignation which she calls a constructive discharge, resulting in a loss of "wages, salary and fringe benefits" (Compl. ¶ 40, ECF No. 1) the precipitating facts (i.e., heightened oversight and scrutiny, threats to report her for minor infractions, and failure to respond her complaints, requests, and inquiries) are not plausibly adverse employment actions because they do not constitute the "significant change in employment status" necessary to a retaliation claim, see Burlington, 524 U.S. at 761, and they do not plausibly show the intolerability requirement necessary for a constructive discharge. Accordingly, the court grants Logan's motion to dismiss Auriemma's retaliation claim.

### III.

Auriemma's complaint asserts that Logan's committed various state and common law torts. Logan's has moved to dismiss based on VWCA's exclusivity provision, which specifies that the "rights and remedies [therein] . . . exclude all other rights and remedies of such employee . . . on account of such injury, loss of service or death." Va. Code § 65.2-307(A). Auriemma argues that the VWCA's exclusivity provisions do not bar her state law claims because her injury (sexual assault) did not "arise out of" her employment as the Supreme Court of Virginia has defined that terms. The court agrees with Auriemma and denies Logan's motion.

The VWCA applies to injuries by accident "arising out of and in the course of" an individual's employment. Va. Code § 65.2-300. When an employee sustains such an injury, the

VWCA provides the exclusive remedy against the employer. Rasnick v. The Pittston Co., 237 Va. 658, 660 (1989). To the extent that an employee's injury is not within the ambit of the VWCA, the employee's common law remedies against his employer are preserved unimpaired. Adams v. Alliant Techsystems, Inc., 261 Va. 594, 599 (2001); Griffith v. Raven Red Ash Coal Co., 179 Va. 790, 798 (1942). An injury is within the ambit of the VWCA only if the injury satisfies both the "arising out of" and the "in the course of" prongs of the statute. The Virginia Supreme Court has consistently held that "when an assault is 'personal to the employee and not directed against [her] as an employee or because of [her] employment, the injury does not arise out of the employment.'" Butler v. S. States Coop., Inc., 270 Va. 459, 466 (2005) (quoting Richmond Newspapers v. Hazelwood, 249 Va. 369, 373 (1995)); see also Reamer v. Nat'l Servs. Indus., 237 Va. 466, 471 (1989); Metcalf v. A.M. Express Moving Servs., Inc., 230 Va. 464, 470 (1986); City of Richmond v. Braxton, 230 Va. 161, 165 (1985). In contrast, an injury occurs "in the course of" an individual's employment when it occurs within the scope of the employment relationship.[5] Butler, 270 Va. at 466.

Butler is instructive. In Butler, the plaintiff was assaulted "in the course of" her employment, while she and the coworker who assaulted her were in the process of making authorized deliveries for the company. Because the assault was personal to the plaintiff and not directed against her because of her status as an employee, the court held that the injury did not "arise out of" her employment. Butler, 270 Va. at 466. Since both prongs were not satisfied, the exclusivity provisions of the VWCA were not triggered. Auriemma's case as pled is analogous

---

[5] The words "in the course of" are commonly considered to refer to the time, place, and circumstances under which an incident occurred. An incident occurs "in the course of" employment when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while the employee is reasonably fulfilling the duties of her employment or is doing something which is reasonably incidental thereto. See Sutter v. First Union Nat. Bank of Va., Inc., 932 F.Supp. 753, 759 (E.D. Va. 1996) (quoting Conner v. Bragg, 203 Va. 204, 208 (1962)).

to <u>Butler</u>. Auriemma alleges that her coworker sexually assaulted her while in a storage closet at the restaurant.  Since the allegations in Auriemma's complaint, taken as true, might establish that her coworker's assault was personal to her (and therefore did not "arise out of" her employment),[6] Auriemma's state law claims are not necessarily subject to the exclusivity provisions of the VWCA.[7]  Accordingly, the court denies Logan's motion to dismiss those claims.

IV.

Based on the foregoing reasons, the court denies Logan's motions to dismiss Auriemma's sexual harassment claim and her state law claims, and grants Logan's motion to dismiss Auriemma's claim of retaliation.

**ENTER**: November 19, 2012.

UNITED STATES DISTRICT JUDGE

---

[6] Logan's also argues that Auriemma's allegation of respondeat superior liability bars her claim under the VWCA because it indicates that the injury occurred in the course of her employment.  However, as the Supreme Court of Virginia explained in <u>Butler</u>,

> To plead respondeat superior liability, a plaintiff must allege that the injury caused by the act of an employee . . . occurred within the scope of the employment relationship.  This is directly analogous to an injury 'in the course of' an individual's employment for purposes of exclusivity under the Act.  *However, this is only one prong of the analysis.  The exclusivity provision of Code 65.2-307 applies only to an injury both 'arising out of' and 'in the course of' an individual's employment.*  Code 65.2-300.  These requirements for compensability of a claim and, in turn, for the exclusivity of the remedy of the Act, are not synonymous.

<u>Id.</u> (emphasis added); <u>see also R&T Investments, Ltd. v. Johns</u>, 228 Va. 249, 252 (1984).

[7] Moreover, the express language of Auriemma's complaint never uses the term "arising out of" her status as an employment; the only language she uses in asserting respondeat superior liability is where she alleges that Doe's conduct was "within the scope of his employment." (Compl. 44, ECF No. 1.)

10